Fuld, J. (dissenting).
The defendant was taken into custody by the police on the afternoon of September 17, 1959, at about 4 o’clock in the afternoon. He was questioned extensively about certain burglaries and admitted, according to the police officers, that one of the items stolen was a television set found in his home. Subsequently, at about midnight of the same day, the police officers went with the defendant to the latter’s apartment, took out the television set and brought it back to the police station.
The questioning continued for a short time and at 1:15 a.m. the defendant was booked for vagrancy; some hours later, he was arraigned in Magistrates’ Court on this charge and, upon the request of the police, paroled in their custody. The defendant was then brought back to the police station and the burglary investigation was continued. After further police interrogation, he confessed to the burglary of which he stands convicted and was arraigned on this charge some 43 hours after being arrested.
In my opinion, the confession should not have been admitted into evidence. As the foregoing account indicates, it was taken from the defendant after he had been arraigned on the vagrancy charge which, the record makes clear, was nothing more or less than a sham, a pretext used by the police to assure their retention of the defendant while they continued interrogating him about the burglaries. Indeed, not only did the facts negate the charge — the defendant actually had $30 in his pocket and was living with his wife in an apartment (see, e.g., People v. Sohn, 269 N. Y. 330)—but the police virtually admitted that they “ booked ” him for vagrancy in order to hold him for further questioning about the burglary. The vagrancy charge was, of course, never pressed.
The court should not tolerate such a flagrant abuse of criminal process as that in which the police here engaged. (See Rex v. *1100 Dick, [1947] 2 D. L. R. 213, 225; see, also, Culombe v. Connecticut, 367 U. S. 568, 627, 632.) As the. Court of Appeal for the Province of Ontario declared in Rex v. Dick ([1947] 2 D. L. R. 213, 225, supra), a case not unlike the one before us, where a murder suspect was arrested for vagrancy and then questioned with respect to the murder of which she was suspected, “ It seems to me to be an abuse of the process of the criminal law to use the purely formal charge of a trifling offence upon which there is no real intention to proceed, as a cover for putting the person charged under arrest, and obtaining from that person incriminating statements, not in relation to the charge laid and made the subject of a caution, but in relation to a more serious and altogether different offence * * *. It is trifling with the long-established maxim nemo tenetur seipsum accusare, and has more than the mere appearance—but, in the intended result it has at times the effect — of a trial by the police in camera. before even the charge has been laid. ’ ’[1]
As I have already stated, the confession obtained from the defendant following his sham arraignment, and 43 hours after he had been arrested, should not have been received in evidence; consequently, the resulting conviction should be reversed.
Taking the view which I do, I find it unnecessary to consider the other points urged upon us by the defendant.
Judgment affirmed.

. The record not only establishes the patent insufficiency of the vagrancy arraignment to protect the defendant’s rights vis-a-vis the burglary charge (see Culombe v. Connecticut, 367 U. S. 568, 627, 632, supra; People v. Euoeco, 11 A D 2d 807), but demonstrates that it was conducted in such a manner as to highlight the sham nature of the vagrancy charge. On his arraignment for vagrancy, the defendant appeared without counsel, the charge was read to him by a clerk and he was informed of his “ right ” to counsel. But, when the magistrate started to inquire into the charge, he was interrupted by a detective who requested that the defendant be paroled in police custody. There then ensued a whispered off-the-record conversation between the police officer and the magistrate and, immediately thereafter, without further word, the defendant was paroled in the custody of the police as had been suggested. It is apparent that the magistrate’s action was based on what he had been told, out of the defendant’s hearing, by the police officer. Such an occurrence was highly improper and, obviously, would not have occurred had the defendant been represented by counsel.